## 1766.  GREEN v. THE STATE.

1. A defendant in a misdemeanor case pending in a city court, having the right to waive trial by jury, by such waiver gains the right to demand trial by the judge. The judge of the city court of Americus has permissive grant of power to try civil cases, but he is not compelled to exercise this power.

2. In the trial of criminal cases where the defendant, having the right to make a choice, prefers to waive trial by jury and to be tried by the judge, the duty of the judge to try such a defendant is obligatory. Trial by a jury where a defendant objects to a jury trial deprives the defendant of the exercise of his right to be tried by the judge. .

3. Where upon a prosecution under the act of 1903 (Acts 1903, p. 90) the accusation or indictment charges, as a part of the description of the contract, that it was made on a named definite date, and the proof shows that such contract was in fact made on a different date, a variance exists which forbids the conviction of the defendant.

Accusation of misdemeanor, from city court of Americus—Judge Crisp. February 8, 1909.

Submitted April 13,—Decided June 15, 1909.

*Blalock & Cobb,* for plaintiff in error.

*Zach Childers, solicitor,* contra.

RUSSELL, J. The plaintiff in error presents two reasons why his conviction of a violation of the labor-contract law of 1903 (Acts of 1903, p. 90) was contrary to law.

1, 2. By exceptions duly preserved pendente lite, as well as in his motion for new trial, the plaintiff in error insists that his trial before the jury, whose verdict found him guilty, is a nullity and the verdict consequently void. It appears from the record that when the case was called for trial the defendant waived trial by jury and demanded a trial before the court without a jury. The court ignored the waiver and refused the demand of the defendant to be tried without a jury, and required the defendant, over his objection, to strike a jury and try the case before the jury thus selected. The point presented for decision is whether one who is being prosecuted for misdemeanor has in any case the right, by waiving trial by jury, to demand that he shall be tried by the presiding judge. The learned judge of the city court of Americus, upon the authority of the ruling in *Travelers Ins. Co.* v. *Thornton,* 116 *Ga.* 121 (52 S. E. 287, 94 Am. St. R. 99), held, as appears from his opinion which is in the record, that it was optional with

the judge as to whether he would decline to try the prisoner. The ruling in the *Thornton* case, supra, followed the older case of *Central Railroad* v. *Gleason*, 69 *Ga.* 201 (3), in which it was held that the judge of the city court of Savannah had power to determine all civil cases of which said court had jurisdiction, without a jury, where no jury was demanded, but that it was not obligatory upon him to do so. It will be noted, however, that the rulings in both the *Gleason* and *Thornton* cases have express reference to civil cases. In the *Gleason* case, Judge Crawford, delivering the opinion of the court, only ruled that it was not mandatory upon the judge of the city court of Savannah, under the authority given him, to hear and determine civil cases, where no demand for a jury had been made by either of the parties. The ruling rested solely upon the particular verbiage of the act then under consideration; for Justice Crawford proceeded to say: "If it had been the purpose of the legislature . . to have *required* him to try all causes in his court where there was no demand for a jury, then the act would have read: 'The judge of said city court shall hear and determine all civil causes of which the said court has jurisdiction. . ' But the act simply says that the judge shall 'have power and authority to hear,' etc. which words in our judgment might and doubtless would have been omitted, had it have been the purpose of the act to repeal the law as it stood before, and have made it the imperative duty of the judge to hear and determine the cases brought to his court wherever a jury was not demanded. As the words used confer a mere permissive grant of power to the judge, we are not authorized to extend their meaning and legal effect to the end that they shall be made compulsory upon him."

In the *Thornton* case Judge Cobb was expressly dealing only with the 14th section of the act creating the city court of Americus (Acts 1900, p. 101), which relates to civil cases alone, and which section employs the same language as the portion of the act creating the city court of Savannah, which had been construed by Judge Crawford in the *Gleason* case; and therefore he very properly held, under the wording of the 14th section, that while the judge of the city court of Americus has authority to try civil cases without a jury in certain instances, "he is not required to do this, if, in his discretion, a jury trial is to be preferred." As the *Gleason* case is cited as authority in the *Thornton* case,

and as Judge Crawford, in the former case, clearly indicates that it is within the power of the legislature to impose upon a judge of a city court the mandatory duty of trying causes in which there is no demand for jury trial, it becomes necessary for us to determine what difference, if any, exists between the provision of the act creating the city court of Americus with reference to the trial of civil cases, as contained in section 14 of that act, which was construed in the *Thornton* case, and the provisions as to the trial of criminal cases, embodied in section 30 of the same act. It is unnecessary to consider that portion of section 30 which relates to defendants confined in jail because of their failure to give bond, or to refer to possible differences in conditions between the cases of defendants arraigned during the regular term of the court when juries are present, or those when the court is not sitting at regular term.

In the case now before us it does not appear whether the defendant was or was not under bond; and the defendant was arraigned, so far as appears from the record, at the regular term of the court when juries were impaneled qualified to try him. In our opinion, the latter fact does not affect the merits of the case; because the defendant, in writing, waived trial by jury and demanded to be tried by the court. As we construe section 30 of the act establishing the city court of Americus, when the defendant waived jury trial and, by writing entered on the accusation, demanded a trial before the court without a jury, the court had no discretion, but it became the judge's duty to hear and determine this defendant's case. After making provision for various contingencies likely to arise upon the arraignment of the prisoner, the legislature declared, in the concluding sentence of the section just referred to, that "If the defendant waives trial by jury, then the said judge *shall* proceed to hear and determine such criminal cases," etc. In this provision the legislature seems to have intentionally adopted the suggestion of Judge Crawford in the *Gleason* case, by using identically the language which would make the duty of the judge, as to a trial of cases in city courts, mandatory instead of discretionary. There may be instances in which the right to trial by a learned and upright judge is as substantial as the right of trial by jury. At any rate, it is manifest from the language employed in the act now before us that when

a prisoner emphasises his waiver of jury trial, by demanding to be tried by the judge, he is exercising a right of choice which it is the duty of the judge to respect.

In delivering the opinion in *Logan* v. *State*, 86 *Ga.* 266 (12 S. E. 406), Judge Simmons says: "There is no reason why a prisoner in a case of this kind should not have the right to be tried by a conscientious and intelligent judge, if he prefers it, as well as the right to be tried by a jury. There may be reasons, indeed, why he should prefer the former to the latter, especially as it may often conduce to the speedy trial which it is the policy of the law to accord him." We apprehend that the waiver of trial by jury, when the court is not in regular term, may in some degree be influenced by the desire for a speedy trial; and yet, on the other hand, the fact that, even though a jury is present, still the defendant prefers to be tried by the judge does not tend to delay the trial of the case.

3. The second assignment of error insisted upon is that the court erred in admitting, over the defendant's objection, testimony that the prosecutor made a verbal contract with the defendant on the 11th day of September, 1908, when the accusation charged that the contract was made on the 29th day of December, 1908. We think that the objection to the testimony was well taken and should have been sustained. A clear and definite description of the contract by means of which the defendant has defrauded his employer is essential in a prosecution for violation of the labor-contract act of 1903. As men may make many contracts within a limited time, it is necessary that the identity of the contract which is the basis of the prosecution should be clearly established, not only for the purpose of protecting the defendant against a subsequent prosecution upon the same charge, but also to enable him to prepare his defense. If it had been alleged that the contract was made in writing, it could not be contended that proof of an oral contract would not be inadmissible. In the trial of misdemeanors the State may prove that the alleged offense was committed at any time within two years,—that is, the act which in itself is unlawful may be alleged to have been done upon a certain date, and may be proved to have been actually committed upon an entirely different day, and yet no variance would arise. But the violation of the labor-contract act (Acts of 1903, p. 90) does

not consist in the act of making a contract. The making of the contract is only one of the essential antecedents to the actual violation, which is the intent to defraud by obtaining advances upon the contemporaneous or pre-existing contract with the intention of not performing the definite contract. To illustrate, it would be permissible to charge that the advances were made upon the 29th of December, 1908, and to prove that they were in fact obtained (and the coexistent fraudulent intent was present) on September 18, 1908; but there would be a fatal variance if the accusation alleged that the contract was made orally and the proof showed that the contract was in writing. And there would be a failure of proof of the contract if it was alleged that the contract was in writing and the original written contract was neither produced nor its loss accounted for. It might be proved that the fraudulent intent was manifest by the obtaining of advances at any date within two years; but if the advances were made more than two years prior to the finding of the accusation, evidence upon the subject would be inadmissible. On the contrary, the contract on the faith of which the advances were made, if reduced to writing, might have been entered into and executed three or more years prior to the finding of the indictment, and still have related solely to the year in which the advances were made and the accusation was found. The contract of labor by means of which fraud may be perpetrated, when reliance upon its terms affords a basis of credit, must not only be unambiguous, but definite; and the fact that one may have defrauded by means of one contract would not authorize conviction for a fraud perpetrated by means of an entirely different contract. The descriptive averments as to the contract in the proof must correspond with those in the indictment or accusion. It would not do to convict upon the allegation that the accused had made a contract with A B, by proof that the contract was made with C D. And for the same reason a contract identified in an accusation as having been made in September can not be the same as one made in December.

For these reasons we think that the judge erred in not granting a new trial.          *Judgment reversed.*